## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**RAY ALVIN HUNDLEY,**

   **Plaintiff,**

**vs.**                                             **CIVIL ACTION NO. 3:21-CV-00568**

**KILOLO KIJAKAZI, ACTING**
**COMMISSIONER OF SOCIAL SECURITY,**

   **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By Order entered October 25, 2021 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the Court are Plaintiff's Motion for Judgment on the Pleadings along with his Brief in Support of Motion for Judgment on the Pleadings, and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 12, 13, 14)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for entry of an award for benefits or alternatively, remand (ECF No. 12); **GRANT** Defendant's request

1

to affirm the decision of the Commissioner (ECF No. 14); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff, Ray Alvin Hundley, (hereinafter referred to as "Claimant"), protectively filed his applications for benefits on December 4, 2019, alleging disability since November 22, 2019[1] due to nerve damage in his neck and back, "hard of hearing", depression, anxiety, panic attacks, memory loss, high blood pressure, head injuries, fractures in back, and arthritis (Tr. at 13, 14, 339). His claims were initially denied on March 10, 2020 (Tr. at 96-112, 113-129) and again upon reconsideration on July 28, 2020 (Tr. at 132-149, 150-167). Thereafter, Claimant filed a written request for hearing on August 10, 2020 (Tr. at 217-218).

An administrative hearing was held on May 26, 2021 before the Honorable Shawn Bozarth, Administrative Law Judge ("ALJ") (Tr. at 31-60). On June 11, 2021, the ALJ entered an unfavorable decision. (Tr. at 10-30) On June 15, 2021, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 278-304) The ALJ's decision became the final decision of the Commissioner on August 23, 2021 when the Appeals Council denied Claimant's Request for Review. (Tr. at 2-7)

On October 20, 2021, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative

---

[1] Initially, Claimant alleged an onset date of March 29, 2018, but then amended it to the later date, and waived all claims to benefits prior to the amended onset date. (Tr. at 334) Notably, this Court affirmed the Commissioner's prior unfavorable decision by Order entered August 2, 2019. (Tr. at 94-95)

Proceedings. (ECF Nos. 7, 8) Subsequently, Claimant filed a Motion for Judgment on the Pleadings along with a Brief in Support of Motion for Judgment on the Pleadings (ECF Nos. 12, 13), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 14). Consequently, this matter is fully briefed and ready for resolution.

**<u>Claimant's Background</u>**

Claimant was 50 years old as of the amended alleged onset date and considered a "person closely approaching advanced age" throughout the underlying proceedings. See 20 C.F.R. §§ 404.1563(d), 416.963(d). (Tr. at 45) Claimant has a high school education, a welding certificate, and last worked in April 2012 as an operator and blaster helper in the coal mining industry. (Tr. at 340-341)

**<u>Standard</u>**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant filing for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims, 20 C.F.R. §§ 404.1520, 416.920.  If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the

3

third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c). These Sections provide as follows:

4

(c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

### Summary of ALJ's Decision

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through December 31, 2017. (Tr. at 16, Finding No. 1) Next, the ALJ determined that Claimant had not engaged in substantial gainful activity since November 22, 2019, the amended alleged onset date. (Id., Finding No. 2)

At the second inquiry, the ALJ found that Claimant had the following severe impairments: degenerative disc disease of the lumbar and cervical spine; anxiety; and depression. (Id., Finding No. 3)

At the third inquiry, the ALJ concluded that Claimant's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., Finding No. 4) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work except:

[T]he claimant could occasionally flex, extend, and rotate his cervical spine. He could occasionally reach overhead and frequently handle, finger, and feel bilaterally. He would be limited to jobs that do not require the use of ropes, ladder, or scaffolds. The claimant could occasionally climb ramps and steps. He could occasionally balance, crouch, stoop, kneel, crawl, and bend. He would be limited to jobs that do not have exposure to dangerous machinery or moving machine parts as well as unprotected heights. He could work in jobs with moderate levels of noise. He would be capable of work with simple, routine, and repetitive instructions in low stress jobs (defined as goal oriented and not done at an assembly line or at a production quota pace), a job in which he is limited to occasional decision making, occasional changes of workplace setting and occasional changes to workplace routine, and a job in which he has only occasional contacts with supervisors, co-workers, and customers.

 (Tr. at 18, Finding No. 5)

At step four, the ALJ found Claimant was incapable of performing past relevant work. (Tr. at 22, Finding No. 6) In addition to Claimant's age, education, the immateriality of the transferability of job skills, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that Claimant could perform. (Tr. at 22-23., Finding Nos. 7-10) Finally, the ALJ determined Claimant had not been under a disability from November 22, 2019 through the date of the decision. (Tr. at 23, Finding No. 11)

**Claimant's Challenges to the Commissioner's Decision**

In support of his appeal, Claimant asserts that the ALJ failed in his duty to fully develop the medical evidence regarding Claimant's impairments, and substituted and/or ignored the opinions of Claimant's treating providers with the opinions offered by non-treating, and partial record-reviewing state physicians (ECF No. 13 at 9-10). Further, while Claimant maintains that each of his impairments individually warrant a finding of disability, the ALJ failed to properly consider and evaluate the combined effects of his impairments, which is supported by the opinions offered by his long-standing treating physicians (Id. at 10-11). Claimant argues the final decision

7

is not supported by substantial evidence, and that this Court should find him disabled, or alternatively, to remand so that his impairments can be fully developed and accurate hypothetical question be posed to the vocational expert concerning Claimant's limitations. (Id. at 12)

In response, the Commissioner asserts that Claimant failed to meet his burden of proof that he was disabled, and that the ALJ satisfied his duty to develop the evidence to assess the appropriate RFC based upon all the relevant, probative evidence. (ECF No. 14 at 3-8) The Commissioner also argues that the ALJ did consider Claimant's treating providers' opinions, and reasonably found them less persuasive under the pertinent Regulations. (Id. at 8-11) The Commissioner further contends that Claimant fails to show he met any specific Listing at step three, and that the ALJ appropriately determined that the severity of Claimant's impairments, singly and in combination, did not meet or medically equal Listing criteria. (Id. at 11-13) Finally, the Commissioner states that the final decision is supported by substantial evidence and asks this Court to affirm. (Id. at 13)

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

Treating Source - James K. Walker, D.O.:

The record shows that Claimant began treatment with Dr. Walker in February 2011, and had treated with him periodically since then for a variety of ailments including chronic neck and back pain, agitated depression, panic disorder, anxiety disorder, hypertension, paresthesia of his

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

arm, and radiculopathy, typically through the use of medications. (Tr. at 601-685, 705-740, 754-758, 806-828) During a three-month follow up on August 6, 2019, musculoskeletal tests revealed no misalignment, asymmetry, crepitation, instability, atrophy or abnormal strength or tone. (Tr. at 735) Claimant exhibited painful and limited range of motion in his cervical and lumbar segments, and rotation and side bending were reduced in the cervical segments and testing to flexion extension and side bending were reduced in the lumbar segments. (Id.) A neurological examination revealed Claimant's grip and pinch were somewhat symmetrical bilaterally, but diminished in strength. (Tr. at 736) Claimant was given a rating of 2/5 on both of his upper extremities and both extremities were noted to have sensation to pain, touch, and proprioception was reduced in both upper extremities along the ulnar distribution on both the left and the right. (Id.) An assessment revealed chronic low back pain, numbness and tingling of both extremities, radiculopathy of the ulnar distribution, general anxiety disorder/depressive disorder, hypertension, and chronic low back pain. (Id.) Dr. Walker noted Claimant's "chronic pain management at least helps him to complete his ADLs but his level of functional impairment is significant and I feel that he is unable to maintain gainful employment." (Id.) He was to recheck in three months. (Id.)

On May 6, 2021, Dr. Walker completed a "Residual Physical Functional Capacity Evaluation" form. (Tr. at 829) His primary diagnosis included cervical disc disorder with bilateral ulnar neuropathy and his secondary diagnosis included chronic neck and low back pain with osteoarthritis. (Id.) Dr. Walker cited additional diagnoses including degenerative joint disease, rotator cuff syndrome of the left shoulder and impaired hearing. (Id.) He determined Claimant can occasionally lift/carry: 10 pounds; frequently lift/carry 10 pounds; stand and/or walk 2 hours; sit 2 hours; alternate sitting and standing every 20 minutes; and was limited in upper and lower

extremities. (Id.) He opined Claimant could never climb ramps, stairs, ladders, and scaffolds, could occasionally kneel, crouch, or crawl, but was somewhat limited in reaching in all directions and handling, and limited in fingering, feeling, and hearing. (Id.) Dr. Walker stated that "[a]fter reviewing his medicals for Social Security Disability it is my opinion that he has been disabled since March 2018." (Id.)

Prestera Center - Jennifer Rice, APRN, PMHNP-BC:

On January 17, 2020, Ms. Rice completed a "Mental Residual Functional Capacity Assessment" form (Tr. at 746-747). She diagnosed Claimant with recurrent major depressive disorder and social anxiety disorder. (Tr. at 746) She indicated Claimant is moderately limited in his ability to understand and remember detailed instructions, in his ability to carry out detailed instructions, and in his ability to work in coordination with others without being distracted by them. (Id.) She also indicated that Claimant is markedly limited in his ability to maintain attention and concentration for extended periods, in his ability to perform activities within a schedule, in his ability to maintain regular attendance and be punctual within customary tolerances, in his ability to complete a normal workday and work week without interruptions, and in his ability to travel in unfamiliar places. (Tr. at 746-747) She opined that Claimant's impairments or treatment would cause him to be absent from work about four days per month (Tr. at 747).

On February 26, 2020, Claimant returned to Ms. Rice for medication management and reported that his depression was a little better with Cymbalta, he still endorsed anhedonia, poor motivation, and no desire to do much of anything. (Tr. at 760) He was encouraged to add another medication such as Abilify to help improve his depression, which he would consider, although he was concerned with side effects and already noted to be "on a lot of meds. Does not want to make

10

any changes today." (<u>Id</u>.) Claimant reported no side effects to medications. (<u>Id</u>.) It was noted that Claimant exercises daily by "get[ting] out to walk a little bit" (<u>Id</u>.) On mental status examination, Ms. Rice indicated Claimant was well groomed and cooperative; appropriate and euthymic affect; normal speech; motor behavior within normal limits; logical thought process; thought content within normal limits; no noted abnormalities in perceptual experience; a steady gait and station; was alert with focused attention/concentration; fully oriented; with normal memory recall; and intact insight and judgment. (Tr. at 761) Claimant's diagnoses included recurrent major depressive disorder, social anxiety disorder, and an unspecified housing or economic problem due to being employed since 2012 with financial strain. (<u>Id</u>.) He was encouraged to continue therapy and to return for recheck in two months or sooner if needed. (Tr. at 762)

Huntington Internal Medicine Group:

On February 25, 2021, Claimant saw Charles Woolums, M.D., concerning a chief complaint of a 2.1 cm left renal stone with hydronephrosis (Tr. at 780-784). On March 10, 2021, Claimant underwent a cystoscopy with removal of ureteral stent, revealing a left renal stone of 4.5 cm; he tolerated the procedure well. (Tr. at 774-777)

Story Consulting Services:

On January 27, 2020, Claimant was seen by consultant, Dawn Raikes, MSN, FNP for a consultative examination. (Tr. at 750-752) Claimant's allegations were anxiety, depression, nerve damage in neck and back, hard of hearing, panic attacks, memory loss, high blood pressure, head injuries, fractures in back and arthritis. (Tr. at 750) He also reported suffering from neck and back pain as he fractured his back in 2014 during a four-wheeler accident, and endorsed having lower back pain in the middle of his back that he described as a constant ache. (<u>Id</u>.) He also reported that

the neck pain begins at the base of his skull and radiated into his left arm causing numbness and tingling pain in his fingers; he described the pain in his neck as throbbing and aggravated by any kind of lifting (Id.). Claimant also reported a history of hearing loss because of working around loud equipment and in the mines and that ten to twelve years ago he tested positive for hearing loss; he also reported that it is hard to hear in a loud room (Id.).

Ms. Raikes observed Claimant could hear and understand normal conversation speech; he had no extremity muscle weakness; peripheral pulses palpable at all levels; full range of motion of all peripheral joints; normal motor strength in upper and lower extremities; decreased range of motion in his lumbar and cervical spine; he ambulated without difficulty with a steady gait; was stable at station; he could ambulate without the use of an assistive device; he could walk on his tip-toes and heels without pain and tandem walk; he could use both hands to perform fine manipulation, gross dexterous movements and good manual dexterity. (Tr. at 751-752)

X-rays taken of his lumbar spine revealed mild multi-level spondylosis, no scoliosis or compression of vertebral bodies, and well-preserved disc spaces. (Id.)

Ms. Raikes diagnosed Claimant with back pain, neck pain, hearing loss, osteoarthritis, hypertension, and previous concussions. (Tr. at 752) She opined that he would have difficulty with the following: repetitive head movements due to impaired range of motion in neck; lifting and carrying moderate to heavy weight; repetitive bending over and twisting and turning activities; pushing or pulling moderate to heavy weight; and working in environments that required non-impaired hearing. (Id.) Otherwise, she found Claimant "appears functionally intact." (Id.)

State Agency Medical/Psychological Consultants:

On February 17, 2020, Lawrence Schaffzin, M.D., at the initial level of review, determined

there was insufficient evidence prior to Claimant's DLI. (Tr. at 96-129) Dr. Schaffzin and Atiya Lateef, M.D., opined that after the DLI of December 31, 2017, Claimant remained capable of performing light work with frequent postural limitations, and the need to avoid concentrated exposure to noise and vibration (Tr. at 96-129, 132-149). On July 28, 2020, at the reconsideration level of review, Joseph A. Shaver, Ed.D., opined Claimant could perform the demands of light work, except he could frequently climb ramps/stairs and perform all other postural activities occasionally (Tr. at 132-149). He also determined that Claimant should avoid concentrated exposure to noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards (Id.).

Regarding Claimant's mental impairments, Paula J. Bickham, Ph.D., opined Claimant retained the ability to learn and perform one- to two-step work-like activities in an environment with no interaction with the public. (Tr. at 96-129)

**The Administrative Hearing**

Claimant Testimony:

Claimant testified that he has pain in his lower back for which he takes hydrocodone. (Tr. at 36) As a result, he has limitations in leaning, bending, lifting, sitting, walking and standing. (Tr. at 36-37) Although Claimant states he had a fracture in his low back, surgery has not been mentioned. (Tr. at 45-46) He has not gone to physical therapy for his low back. (Tr. at 46) He testified that his pain interferes with his sleep and makes him irritable, but his medication only relieves his pain to a point. (Tr. at 47) Claimant testified that he also fractured his right ankle about three or four years ago, and he has pain and discomfort, affecting his ability to stand and walk. (Tr. at 47-48)

13

He also experiences nervousness about not being able to work, as well as lack of sleep that he has monthly counseling for. (Tr. at 37-38, 48) Claimant had not been tested for his hearing, but he does not require hearing aids. (Tr. at 38-39) Claimant testified he had neuropathy in his arms, but he could still open a door, use a knife and fork, drive a car for about 20-30 minutes, although that is due to his back. (Tr. at 39-40) He can still perform many manipulative functions, including open a jar with some effort, drink from a cup or glass, bathe and comb his hair, and he does not use a splint or hand brace. (Tr. at 40-41) Claimant takes medication for his high blood pressure. (Tr. at 41) He smokes a pack of cigarettes a day. (Tr. at 42) He testified that he gets drowsy from his medications. (Tr. at 42, 48-49) He does not use a cane, walker, or wheelchair. (Tr. at 42) His depression makes him want to avoid others and impairs his concentration. (Tr. at 49-51)

Claimant did not need assistance taking his medication. (Tr. at 43) He lives with his mother and mostly watches TV. (Id.) He used to enjoy hunting and fishing, but neither appeal to him anymore. (Tr. at 44)

Vocational Expert ("VE") Testimony:

After listening to Claimant's testimony, the VE determined that an individual with Claimant's work history, education and with the controlling RFC, *supra*, the individual could perform the work of an office cleaner, garment bagger, and sorter. (Tr. at 53-55) The VE also opined that the individual would be incapable of any work if off-task 15% of the time, miss more than one day a month, being unable to concentrate on tasks, to persist in job duties, or to remain on pace due to a combination of symptoms. (Tr. at 55)

In response to questions from Claimant's attorney, the VE confirmed that if Claimant was unable to stand and/or walk more than two hours in an eight-hour workday and sit two hours with

alternate sitting and standing options every twenty minutes, these limitations would preclude all jobs. (Tr. at 57-58) The VE also confirmed that if Claimant were markedly limited in his ability to concentrate and maintain attention or miss at least four days of work per month, he would be unable to maintain employment. (Tr. at 58-59)

## Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claims is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

## Analysis

Because Claimant has also filed a DIB claim, he must show that he became disabled prior

to the expiration of his insured status on December 31, 2017. (Tr. at 14) The DIB program provides for payment of disability benefits to individuals who are "insured" by virtue of their contributions to the Social Security trust fund through Social Security tax on their earnings. 20 C.F.R. §§ 404.110, 404.315. To be entitled to DIB in this case, Claimant bears the burden of showing that he became disabled prior to December 31, 2017. See 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). A claimant who first satisfies the medical requirements for disability only after his date last insured will not be entitled to DIB benefits. 20 C.F.R. § 404.131(a). See also Jenkins v. Astrue, No. 3:10cv705, 2012 WL 3776370, at *3 n.6 (E.D. Va. Apr. 25, 2012) (citing Matullo v. Bowen, 926 F.2d 240, 246 (3d Cir. 1990)) (explaining that a worsened condition or a new impairment arising after the date last insured cannot be a basis for remand or an award of disability benefits). However, because Claimant alleged an onset date well after the expiration of his insured status, the period under review is not relevant for purposes of DIB, as his claim for SSI concerns a relevant period from December 4, 2019, the protective filing date, through June 11, 2021, the date of the ALJ's decision. (Tr. at 24)

As noted *supra*, Claimant argues that the ALJ failed in his duty to develop the record with respect to several alleged impairments[3], and that he "summarily ignored" examining and treating provider opinions, including those provided by Jennifer Rice, APRN, PMHNP-BC, and James Walker, D.O. (ECF No 13 at 10)[4] With respect to Claimant's contention that the ALJ "summarily

---

[3] Claimant specified that the following impairments preclude his ability to engage in substantial gainful activity: chronic cervical and lumbar strain; osteoarthritis; cognitive disorder; major depression; panic disorder; and anxiety disorder. (ECF No. 13 at 9)

[4] The undersigned notes that Claimant refers to several exhibits purportedly containing the opinions of these providers: Exhibits 12F, 13F, 14F, 15F, 17F, 18F, 19F, 20F, and 21F. (Id. at 10) However, a review of the record shows that Exhibits 14F, 15F, 17F, 18F, 19F, and 20F (Tr. at 754-759, 760-763, 768-771, 772-787, 788-804, 805-828) concern

ignored" the medical opinion evidence as to his limitations, the undersigned **FINDS** this argument lacks merit.

In his written decision, the ALJ explicitly addressed the opinions provided by Ms. Rice (Tr. at 20-21, 746-749) and Dr. Walker (Tr. at 21, 829-832). Additionally, the ALJ considered the opinions provided by state agency medical and psychological consultants (Tr. at 20, 96-112, 113-129, 132-149) as well as the opinion evidence from the consultative examiner (Tr. at 21, 750-753). The ALJ also discussed the relevant medical evidence of record throughout the written decision, including the treatment records identified in footnote 4, *supra* (Tr. at 16-20).

The Duty to Develop the Evidence:

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id. The court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim in order to determine if it met the requirements in the listings of impairments amounted to a neglect of his duty to develop the evidence. Id.

Nevertheless, it is Claimant's responsibility to prove to the Commissioner that he is disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to

---

treatment records from Boone Memorial Medical Clinic, Prestera Center, Huntington Internal Medicine Group and Coalfield Health Center, and do not contain opinion evidence as defined under the Regulations, *supra*.

whether or not you are blind or disabled." Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that he has an impairment, further, the Regulations are clear that this responsibility is ongoing at each level of the administrative review process.  Id. The Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings.  It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step.  The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . .  If the process ends at step two, the burden of proof never shifts to the Secretary.  . . .  It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as Claimant's counsel. Clark v. Shalala, 28 F.3d 828, 830-831 (8th Cir. 1994). In this case, Claimant was represented by counsel and the ALJ has the right to assume that Claimant's counsel was presenting the strongest case for benefits. See Laney v. Astrue, 2011 WL 11889, at *11 (S.D.W. Va. Jan. 4, 2011) (Eifert, M.J.) (citing Nichols v. Astrue, 2009 WL 2512417, at *4 (7th Cir. 2009). An ALJ's duty to develop the record does not require him to make specific inquiries into Claimant's treatment modalities or search for cumulative evidence; his duty is to obtain sufficient evidence upon which he can render an informed decision. Id. (internal citations omitted).

Claimant bears the burden of establishing a *prima facie* entitlement to benefits. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") Similarly, Claimant

"bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

With respect to Claimant's assertion that the ALJ failed to develop the evidence concerning his numerous impairments (See footnote 3, *supra*), it is noted that Claimant neither specifies what evidence was inadequately fleshed out by the ALJ, nor what evidence specifically supports his argument that he is disabled. For starters, it is important to recognize that this Circuit has recognized that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*)); see also Call v. Berryhill, Civil Action No. 2:17-CV-02292, 2018 WL 4659342, *4 (S.D.W. Va. Sept. 28, 2018). To the extent that Claimant complains that the ALJ may not have specifically mentioned each of his alleged impairments[5], he stated that he considered all the evidence of record. (See Tr. at 14, 19 ("After careful consideration of all the evidence. . ."); Tr. at 16, 18 ("After careful consideration of the entire record. . ."). Having so stated, this court should "take [him] at [his] word." Reid, 769 F.3d at 865 ("The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word."); see also Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."); Christina W. v. Saul, No. 4:19-cv-00028-PK, 2019 WL 6344269, *4 (D. Utah Nov. 27, 2019)("Plaintiff further argues that the ALJ erred in not explicitly discussing various

---

[5] Though Claimant does not identify or specify any one impairment that the ALJ failed to mention or consider, it appears that the ALJ took great pains to mention each of Claimant's alleged impairments and considered the symptoms related thereto and how they affected Claimant's overall functioning in his review of the medical and other evidence of record in the RFC assessment.

pieces of evidence, particularly the fact that she is participating in a structured treatment program. While the ALJ must consider all the evidence, she need not recite each piece of evidence she has considered. The ALJ stated that she carefully considered the entire record and the Court can take her at her word."). Moreover, despite Claimant's listing the various diagnoses and symptoms related thereto in his brief, this is not the litmus test for disability, as it is also well known that diagnoses alone do not establish disability, because there must be a showing of related functional loss. See <u>Gross v. Heckler</u>, 785 F.2d 1163, 1166 (4th Cir. 1986) (*per curiam*) (internal citations omitted).

Nevertheless, despite Claimant's assertion otherwise, the ALJ considered the medical evidence (and opinions) from the treating and examining sources of record, including medical evidence that predated the amended alleged onset date (See Tr. at 28-29).[6] In addition, the ALJ also expressly considered Claimant's and the vocational expert's testimonies (Tr. at 18-20, 23). Indeed, when asked by the ALJ at the beginning of the hearing if there was a complete record in this case, Claimant's attorney responded in the affirmative. (Tr. at 34; see also, Tr. at 14 ("The claimant submitted or informed the [ALJ] about additional written evidence less than five business days before the scheduled hearing date . . . the requirements of 20 CFR 404.935(b) and 416.1435(b) are satisfied and admits this evidence into the record.") In short, Claimant has failed to demonstrate any paucity in the evidence that would have warranted further development of the record.

Accordingly, the undersigned **FINDS** that Claimant's contention that the ALJ erred by failing to develop the record is without merit.

---

[6] In the List of Exhibits attached to the ALJ's written decision, nearly half of the medical records admitted into evidence concern treatment records that predated Claimant's amended alleged onset date by several years.

<u>Consideration of the Combined Effect of Impairments:</u>

In a conclusory fashion, Claimant asserts that the medical evidence confirms that the combined effect of his severe physical and mental impairments rendered him totally disabled.[7] (ECF No. 13 at 11) Claimant does not specify which impairment would individually warrant a disability finding, instead, he again emphasizes that the ALJ failed to consider the opinion evidence from his "longtime" treating physicians, including Dr. Walker, Ms. Rice, and Michael Goldman, MSW of University Psychiatric Associates. (<u>Id</u>.)

The Regulations provide:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

See 20 C.F.R. §§ 404.1523(c), 416.923(c). When confronted with a combination of impairments, an adjudicator must not only acknowledge "the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 398 (4th Cir. 1974). The Fourth Circuit has held that the ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. <u>Id</u>. In short, the ALJ must analyze the cumulative or synergistic effect that the various

---

[7] Because Claimant provides no further argument or explains how the ALJ erred on this ground, to this extent, Claimant has essentially waived this challenge on appeal. <u>Erline Co. S.A. v. Johnson</u>, 440 F.3d 647, 653 n.7 (4th Cir. 2006) (a "[c]onclusory remark is insufficient to raise on appeal any merits-based challenge"); <u>accord Sedghi v. PatchLink Corp.</u>, 440 Fed. App'x 165, 167 (4th Cir. 2011) ("By advancing only a conclusory argument, Sedghi has likely waived the issue.").

impairments have on Claimant's ability to work. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

"The Listing of Impairments . . . describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." See 20 C.F.R. §§ 404.1525(a), 416.925(a); Sullivan v. Zebley, 493 U.S. 521, 532 (1990). To qualify for benefits, Claimant must show that his combination of impairments is "equivalent" to a listed impairment, and he "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." See Id. at 531.  A claimant must meet all, not just some, of the criteria for a listing to apply. Id. at 530.

As noted *supra*, the ALJ found that none of Claimant's severe impairments, even their combined effects, met Listing requirements at the third step of the sequential evaluation process. (Tr. at 16-18) The ALJ first evaluated Claimant's back impairment under Section 1.15, noting there was no evidence of compromise of a nerve root (Tr. at 16, 751), and while there was a showing of mild multi-level spondylosis (Tr. at 16, 752), Claimant does not use a cane or walker to ambulate, and his gait is normal (Tr. at 16, 751)[8]; this evidence failed to meet Section 1.18 criteria as well (Tr. at 16-17). The ALJ also examined the evidence relating to Claimant's mental impairments under Listings 12.04 and 12.06, finding only moderate limitations in each of the broad areas of functioning. (Tr. at 17) The ALJ discussed the relevant medical and other evidence of record that supported his findings, including Claimant's Function Reports from January 2020 (Tr.

---

[8] The ALJ referenced the findings during the January 2020 consultative examination submitted by Dawn M. Raikes. (Tr. at 750-752)

at 358-365), treatment records from Boone Memorial Medical Clinic from February 2020 (Tr. at 754-759), treatment and progress notes from Prestera Center from February 2020 (Tr. at 760-763) and April 2020 (Tr. at 768-771), as well as office treatment records from Huntington Internal Medicine Group from February and March 2021 (Tr. at 782, 775).

Significantly, this evidence does nothing to advance Claimant's argument that the combined effects from these impairments warrant a disability finding, as the clinical findings therein are largely unremarkable: Ms. Raikes opined Claimant "appears functionally intact" (Tr. at 752); Ms. Rice's treatment notes indicated Claimant's "attention/concentration focused, sensorium – alert" and that he was fully oriented, with normal recall memory, with intact insight and judgment, exhibited logical thought processes, and his thought content was within normal limits (Tr. at 761, 769); Dr. Woolums noted "no psychological symptoms" (Tr. at 775), normal psychiatric and neurological findings (Tr. at 782), in addition to finding Claimant had normal balance, gait and stance (Id.).

To the extent that Claimant takes issue with the ALJ's evaluation of his subjective complaints, it is noted that recently the Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. It is important to recognize that in Arakas, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were

inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant, if not critical, aspect of the Arakas holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. Id. Essentially, the Fourth Circuit has once again cautioned against an ALJ's analysis must not primarily rely upon the lack of objective medical evidence as the reason for discounting a claimant's complaints. As demonstrated by the foregoing, this did not occur here, the ALJ herein did not select only those portions from the objective medical evidence that failed to support Claimant's allegations of disabling impairments, the ALJ also examined both aggravating and mitigating factors with respect to Claimant's subjective complaints which included her testimony, her reports to providers, the objective medical evidence, as well as the opinion evidence. The law does not require one to be pain-free or experience no discomfort in order to be found not disabled. Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1996). In this case, the ALJ provided a thorough and adequate analysis of Claimant's subjective complaints that complied with the pertinent Regulations and case law.

Clearly, the ALJ considered the medical evidence as well as Claimant's reported symptomology from the relevant time period. As discussed *supra*, the ALJ did consider this evidence in making his third step determination, thus, to the extent that Claimant argues that the ALJ failed to consider and evaluate the combined effects of his impairments, the undersigned **FINDS** this argument lacks merit. Additionally, to the extent that Claimant contends the ALJ failed to consider the medical records provided by his treating and examining providers, the undersigned **FINDS** this contention also lacks merit. Finally, to the extent that Claimant asserts the ALJ failed

to consider his subjective complaints, the undersigned **FINDS** that the ALJ's subjective symptoms analysis complied with the pertinent Regulations and controlling case law and is based upon substantial evidence. The undersigned further **FINDS** the ALJ's discussion of the objective and other evidence of record in his evaluation of Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms, and that the ALJ's conclusion that Claimant's statements were inconsistent with the evidence of record complied with the applicable law, is also supported by substantial evidence.

Evaluation of Opinion Evidence:

Claimant also argues that the ALJ "substituted" the opinions from treating and examining providers with those provided by non-examining physicians, ostensibly because the ALJ did not adopt the opinions determining Claimant was disabled or far more limited than the RFC assessment (ECF No. 13 at 11). In the written decision, the ALJ explicitly applied the regulatory framework pursuant to Sections 404.1520c and 416.920c to claims filed after March 27, 2017: "[a]s for medical opinions and prior administrative medical findings, the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, *including those from medical sources*." (Tr. at 20) (emphasis added) Here, the ALJ properly applied the pertinent Regulations, which emphasizes the supportability and consistency factors when assessing the persuasiveness of the medical opinions of record. Instead of assigning weight to medical opinions, the ALJ now just considers the persuasiveness of a medical opinion (or a prior administrative medical finding). 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b). Critically, the source of the opinion is not the most important factor in evaluating its persuasive value, instead, the most important factors are supportability and

25

consistency. Id. When discussing his finding about whether an opinion is persuasive, the ALJ need only explain how he considered the "the most important factors" of supportability and consistency. Id. §§ 404.1520c(c), 416.920c(c). The ALJ "may" comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. Id. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

In this case, the ALJ appropriately recognized that pursuant to 20 C.F.R. §§ 404.1527(d) and 416.927(d), he found the opinion provided by Ms. Rice "not persuasive", and specifically noted that her finding Claimant had marked limitations in his ability to maintain attention and concentration for extended periods and perform activities within a schedule, as well as her prediction that he would be absent from work about four days per month, was unsupported by his normal mental health findings and inconsistent with his conservative treatment history (Tr. at 20-21). The ALJ also considered the residual functional capacity form Dr. Walker completed, and addressed the physical limitations endorsed by Claimant's treating source (described *supra*), and determined this opinion was only partially persuasive: "because it is generally supported by the exertional limitations provided by DDS. However, the walking, standing, and sitting limitations are [] not supported elsewhere in the record and are not consistent with the claimant's conservative treatment history." (Tr. at 21)

The Regulations and pertinent case law support not only the ALJ's observations, but also, an RFC assessment lies squarely with the ALJ, not with any medical provider/examiner. 20 C.F.R. §§ 404.1546(c), 416.946(c); see Felton-Miller v. Astrue, 459 Fed. App'x 226, 230-31 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). Further, to the extent Claimant contends the ALJ should have adopted his treating sources' findings that he

was essentially disabled, the Regulations expressly provide that the Commissioner is the final arbiter on such issues, and is under no obligation to give any special significance to the source for issues reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2), (d)(3), 416.927(d)(2), (d)(3).

As an additional matter, as mentioned *supra*, Claimant takes issue with the ALJ's failure to consider the opinion of Michael Goldman, MSW (ECF No. 13 at 11). The most recent treatment record from this provider is dated June 11, 2014 – more than five years prior to the amended alleged onset date (Tr. at 576). Moreover, the record shows that Claimant had only seen Mr. Goldman seven (7) times since his first visit on September 25, 2013, when he sought counseling services for depression and anxiety (Tr. at 507-508, 576-585).[9] Of further significance, is that none of Mr. Goldman's treatment records contains an opinion or what can be construed as a "medical opinion" – which is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activity or adapt to environmental conditions. See 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The Regulations also define "findings . . . about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review" as "prior administrative medical finding[s]." Id. at §§ 404.1513(a)(5), 416.913(a)(5).

---

[9] The treatment notes indicate Claimant sought counseling for depression related to his divorce from his first wife, the layoff from his mining job, the loss of his parents, recovery from an assault committed against him, and the loss of family heirlooms from his parents' property following their deaths. While it was noted Claimant was understandably dealing with the grief and trauma of these losses, Mr. Goldman indicated Claimant was improving with continued therapy. Significantly, however, the treatment notes do not indicate Claimant had long-standing issues or problems related to concentration or attention.

Furthermore, to the extent Claimant takes issue with the ALJ's "substitution" of treating and examining providers' opinions with those of non-examining sources who only reviewed "portions" of Claimant's file (ECF No. 13 at 11, 12), the undersigned notes that Claimant fails to identify what records were missing from the state agency consultants' review. Additionally, Claimant does not specify what, if any, prejudice was caused to him. There is no dispute that the state agency consultants reviewed the medical and other evidence of record post-dating the amended alleged onset date, and did not review any of the medical records that were received since they issued their opinions. See, generally, Hampton v. Colvin, No. 1:14-cv-24505, 2015 WL 5304294, at *21-22 (S.D.W. Va. Aug. 17, 2015); Starcher v. Colvin, No. 1:12-cv-01444, 2013 WL 5504494, at *7 (S.D.W. Va. Oct. 2, 2013) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that in the opinion of the [ALJ] ... may change the State agency medical ... consultant's finding' ... is an update to the report required." Id. (quoting Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir.2011)) (ellipses and brackets in original).

Nevertheless, despite Claimant's contention that the ALJ impermissibly substituted the opinions from treating/examining sources with DDS source opinions, it is significant that the ALJ still only found them "partially persuasive", and instead, "provided further limitations based on the hearing testimony and evidence received at the hearing level." (Tr. at 20) Regardless, the ALJ evaluated the state agency consultants' opinion evidence under the same legal standard as Claimant's treating and examining sources, in compliance with the pertinent Regulations, as set

forth *supra*.

Although Claimant advocates for an alternate decision, such are matters that involve resolving the conflicting evidence of record, which is an evidentiary finding within the purview of the ALJ. In short, though Claimant may disagree with the ALJ's determination that he is not disabled, this Court cannot re-weigh this conflicting evidence or substitute its judgment for the Commissioner's. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also, SSR 96-8p, 1996 WL 3741784, at *7. The ALJ's narrative of the record included the objective medical evidence, including imaging, and clinical examination findings, as well as the other evidence of record, including but not limited to Claimant's own statements and testimony; the ALJ's thorough discussion of all this evidence, and his ultimate determination that Claimant remained capable of light work with certain restrictions during the relevant period despite his subjective complaints, provided sufficient explanation allowing for meaningful judicial review. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). This Court is not "left to guess about how the ALJ arrived at his conclusions" therefore remand is not necessary. Id. at 637. Accordingly, the undersigned **FINDS** the ALJ's evaluation of the opinion evidence is supported by substantial evidence.

Finally, the undersigned **FINDS** that the Commissioner's final decision determining that Claimant was not disabled from November 22, 2019 through the date of the decision is supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's Motion for Judgment on the Pleadings (ECF No. 12), **GRANT** the

Defendant's request to affirm the decision below (ECF No. 14), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: March 31, 2022.



Omar J. Aboulhosn
United States Magistrate Judge